IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
January 14, 2020 Session

## GEORGE OVIASOJIE v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Davidson County**
**No. SCE263556      Angelita Blackshear Dalton, Judge**

_____

### No. M2019-00761-CCA-R3-PC
_____

The petitioner, George Oviasojie, appeals the denial of his post-conviction petition, arguing the post-conviction court erred in finding he received effective assistance of counsel prior to and during his guilty plea hearing.  Upon our review of the record, arguments of the parties, and pertinent authorities, we affirm the denial of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

J. ROSS DYER, J., delivered the opinion of the court, in which D. KELLY THOMAS, JR., and CAMILLE R. MCMULLEN, JJ., joined.

Manuel B. Russ (on appeal) and William J. Conway (at hearing), Nashville, Tennessee, for the appellant, George Oviasojie.

Herbert H. Slatery III, Attorney General and Reporter; Benjamin A. Ball, Senior Assistant Attorney General; Glenn Funk, District Attorney General; and Amy M. Hunter, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### *Facts and Procedural History*

On February 1, 2018, the petitioner pled guilty to theft of property valued at $1,000 or less.[1]  He was sentenced to eleven months and twenty-nine days of supervised probation which was to run consecutive to the petitioner's prior sentence for a vandalism conviction.  The petitioner later filed a timely pro se petition for post-conviction relief.[2] Following the appointment of counsel, the petitioner filed an amended petition for post-

---

[1] The transcript of the guilty plea hearing is not included in the record.
[2] The petitioner's pro se petition for post-conviction relief is not included in the record.

conviction relief, arguing trial counsel was ineffective for failing to advise the petitioner of the immigration consequences of his guilty plea. An evidentiary hearing was held on March 1, 2019, during which trial counsel, the petitioner, and Mary Kathryn Harcombe testified.

Trial counsel, who had been licensed for "a little over a year" at the time of the post-conviction hearing, testified he was initially retained to represent the petitioner on a petition to reinstate his probation regarding a prior vandalism conviction. However, after meeting with the petitioner in jail, trial counsel learned the petitioner had recently been charged with theft and agreed to negotiate a plea deal on his behalf.

Regarding his knowledge and experience with immigration law, trial counsel testified he had taken one continuing legal education course that covered the intersection between criminal and immigration law. However, trial counsel was unable to discuss the differences between immigration classifications or how a criminal conviction may affect each classification. Trial counsel was aware that theft is considered a crime of moral turpitude and would, therefore, have a greater impact on immigration status than a probation violation.

When discussing the petitioner's immigration status, the petitioner informed trial counsel that he was eligible to become a naturalized citizen in five years, and trial counsel advised the petitioner that any guilty plea "would very likely have an impact on his immigration status." However, trial counsel admitted he did not perform any research to determine the precise impact the petitioner's guilty plea would have on his immigration status because the petitioner did not ask any questions about trial counsel's advice. If the petitioner had any questions or concerns about the immigration consequences of a guilty plea, trial counsel "probably would have passed the case."

On cross-examination, trial counsel testified the petitioner's primary concern was getting out of jail. Therefore, trial counsel filed a petition to reinstate the petitioner's probation for the vandalism charge and negotiated a plea deal for the theft charge that did not include jail time. Prior to the guilty plea hearing, trial counsel and the petitioner reviewed the plea petition. However, the petitioner did not ask trial counsel any questions about the plea offer or how it would affect his immigration status. Trial counsel testified he did not have any problems communicating with the petitioner in person but agreed it was hard to understand the petitioner's accent over the phone.

Mary Kathryn Harcombe, an immigration specialist with the Metropolitan Nashville and Davidson County Public Defender's Office, testified as an expert in immigration consequences in criminal defense. Because of the complexity of the immigration field, Ms. Harcombe opined it is difficult for criminal defense attorneys to

accurately and adequately advise their clients of immigration consequences. When asked how a misdemeanor conviction would affect the petitioner's status as a green card holder, Ms. Harcombe testified that one conviction of a crime of moral turpitude would make the petitioner "inadmissible" while two convictions would make him deportable. Ms. Harcombe explained that a person who is "inadmissible" is unable to legally re-enter the United States or become a naturalized citizen. Ms. Harcombe testified that, although the law is unclear whether vandalism is a crime of moral turpitude, the law is "clear cut" that theft is a crime of moral turpitude. In this case, Ms. Harcombe opined it was not sufficient for trial counsel to merely advise the petitioner that his guilty plea would likely have immigration consequences. Instead, trial counsel should have advised the petitioner what consequences he would face, especially regarding the theft conviction.

On cross-examination, Ms. Harcombe testified trial counsel's advice that a guilty plea could hurt his immigration status was "tantamount to saying [he didn't] know what [the guilty plea] could do." While Ms. Harcombe acknowledged that a theft conviction did not automatically make the petitioner deportable, she testified it did make him "inadmissible."

The petitioner testified that he came to the United States from Nigeria in 2009 on a student visa, eventually receiving a green card. While on probation for a vandalism conviction, the petitioner failed to attend mandatory classes and was charged with theft, violating his probation. Trial counsel was retained to assist the petitioner in reinstating his probation and negotiating a plea deal for the theft charge. The petitioner testified trial counsel did not ask the petitioner about his immigration status, and, as an immigrant, any mention of possible consequences to his immigration status would have "result[ed in] goosebumps." Instead, the petitioner testified trial counsel spoke "less than 50 or 60 words" regarding the theft charge and assured the petitioner that the State's offer was the best deal available. Although the petitioner acknowledged signing the plea petition, he denied reviewing it with trial counsel and only signed it because he wanted to get out of jail. Two weeks after his release, the petitioner began to research the consequences of his guilty plea and discovered he was no longer eligible to become a naturalized citizen or legally re-enter the United States. On cross-examination, the petitioner agreed that he chose to plead guilty because he wanted to get out of jail.

After its review of the evidence presented, the post-conviction court denied relief, and this timely appeal followed.

## *Analysis*

On appeal, the petitioner argues the post-conviction court erred in denying his petition, alleging trial counsel was ineffective for failing to adequately advise the

petitioner of the immigration consequences of his guilty plea. The State contends the petitioner has failed to meet his burden. Upon our review, we agree with the State.

The petitioner bears the burden of proving his post-conviction factual allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f). The findings of fact established at a post-conviction evidentiary hearing are conclusive on appeal unless the evidence preponderates against them. *Tidwell v. State*, 922 S.W.2d 497, 500 (Tenn. 1996). This Court will not reweigh or reevaluate evidence of purely factual issues. *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997). However, appellate review of a trial court's application of the law to the facts is *de novo,* with no presumption of correctness. *See Ruff v. State*, 978 S.W.2d 95, 96 (Tenn. 1998). The issue of ineffective assistance of counsel presents mixed questions of fact and law. *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001). Thus, this Court reviews the petitioner's post-conviction allegations *de novo,* affording a presumption of correctness only to the post-conviction court's findings of fact. *Id.*; *Burns v. State*, 6 S.W.3d 453, 461 (Tenn. 1999).

To establish a claim of ineffective assistance of counsel, the petitioner must show both that counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceedings. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Taylor*, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that the standard for determining ineffective assistance of counsel applied in federal cases is also applied in Tennessee). The *Strickland* standard is a two-prong test:

First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687. In order for a post-conviction petitioner to succeed, both prongs of the *Strickland* test must be satisfied. *Id.* Thus, courts are not required to even "address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.*; *see also Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996) (stating that "a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim").

A petitioner proves a deficiency by showing "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." *Goad*, 938 S.W.2d at 369 (citing *Strickland*, 466 U.S. at 688;

*Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)). The prejudice prong of the *Strickland* test is satisfied when the petitioner shows there is a reasonable probability, or "a probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. However, "[b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id*. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

A guilty plea must be knowingly, voluntarily, and intelligently entered in order to be valid. *Lane v. State*, 316 S.W.3d 555, 562 (Tenn. 2010). The court must determine whether the guilty plea evidences a voluntary and informed decision to pursue a guilty plea in light of the alternative options available to the defendant. *Id.* In the context of a post-conviction challenge to a guilty plea, both prongs of the *Strickland* test must be met. *Garcia v. State*, 425 S.W.3d 248, 256 (Tenn. 2013). Thus, to successfully challenge his guilty plea, the petitioner must show counsel's performance was deficient, and he "'must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Calvert v. State*, 342 S.W.3d 477, 486 (Tenn. 2011) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)); *Garcia*, 425 at 257 (Tenn. 2013).

Citing *Padilla v. Kentucky*, 559 U.S. 356 (2010), the petitioner argues trial counsel had a duty to properly inform him of the immigration consequences of his plea agreement. The *Padilla* Court recognized that "[t]he weight of prevailing professional norms supports the view that counsel must advise her client regarding the risk of deportation." *Id.* at 367. Because the terms of the immigration statute at issue in *Padilla* were "succinct, clear, and explicit in defining the removal consequence for Padilla's conviction," the Court held Padilla's counsel was deficient because she "could have easily determined that his plea would make him eligible for deportation simply from reading the text of the statute." *Id.* at 368. However, because "[i]mmigration law can be complex," the Court concluded that "[w]hen the law is not succinct and straightforward . . ., a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences." *Id.* at 369. Because *Padilla* resolved only whether trial counsel has an obligation to advise of the deportation consequences of a guilty plea, the Court did not address whether trial counsel also has an obligation to advise a client whether a guilty plea will have an effect on the client's future eligibility to legally immigrate to the United States. *See Garcia*, 425 S.W.3d at 260 ("*Padilla* neither mandates, nor even suggests, that defense counsel in a state criminal trial must be able to advise her client of the effect a guilty plea is likely to

have upon the client's future eligibility to immigrate legally to the United States."). Furthermore, because "[l]egal immigration depends upon many factors, which may change as a result of Congressional action, executive agency policy choices, or court decisions," the Tennessee Supreme Court declined to extend *Padilla* to require trial counsel to advise a client regarding a guilty plea's effect on the client's future ability to immigrate legally to the United States. *Id.*

In the case before us, trial counsel testified he and the petitioner discussed the petitioner's immigration status, and trial counsel informed the petitioner that a guilty plea "would very likely have an impact on his immigration status." However, trial counsel acknowledged he did not research the issue to determine the exact consequences the petitioner would face. Trial counsel asked the petitioner if he had any questions regarding this advice, but the petitioner did not inquire further. If the petitioner had requested more information regarding the consequences to his immigration status, trial counsel "probably would have passed the case." Trial counsel also testified the petitioner's predominant consideration was getting out of jail as quickly as possible. The petitioner disputed much of trial counsel's testimony, insisting trial counsel never asked the petitioner about his immigration status. Instead, two weeks after his release, the petitioner researched the immigration consequences he faced for pleading guilty to theft and discovered he is now inadmissible. However, the petitioner agreed that he chose to plead guilty because he wanted to get out of jail. Ms. Harcombe testified that, while the law is unclear whether vandalism is a crime of moral turpitude, the law is clear that theft is considered a crime of moral turpitude. Therefore, Ms. Harcombe opined it was deficient for trial counsel to merely inform the petitioner that his guilty plea would "likely" have immigration consequences.

The post-conviction court implicitly accredited trial counsel's testimony and concluded trial counsel's performance was not deficient based on "the plea petition, which bears the [p]etitioner's signature, [trial counsel's] testimony that he discussed the [p]etitioner's immigration status with him, and the [p]etitioner's primary concern of getting out of jail." Our review of the record mirrors the findings of the post-conviction court. Although Ms. Harcombe testified the law is clear that theft is a crime of moral turpitude, she was unable to definitively state whether vandalism was also a crime of moral turpitude. Therefore, the law was not "succinct, clear, and explicit" as to whether the petitioner's guilty plea for theft would result in deportation. Instead, it appears the petitioner's theft conviction merely made him "inadmissible." While the petitioner's guilty plea may have resulted in a negative change to his immigration status, *Padilla* does not require trial counsel to advise the petitioner what effect a guilty plea would have on his future ability to immigrate to the United States. *See Garcia*, 425 S.W.3d at 260. Accordingly, we conclude the petitioner has failed to establish trial counsel was deficient

in not fully advising the petitioner of the consequences to his immigration status as a result of his guilty plea.

Furthermore, the petitioner did not testify that he would have rejected the plea offer if he was aware of the ramifications to his immigration status. Instead, the petitioner testified that he agreed to plead guilty because he wanted to get out of jail. Therefore, the petitioner cannot establish prejudice and is not entitled to relief. *See Calvert*, 342 S.W.3d at 486.

### *Conclusion*

Based upon the foregoing authorities and reasoning, the judgment of the post-conviction is affirmed.

_____
J. ROSS DYER, JUDGE