IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs at Jackson April 2, 2024

## JEFFREY NEAL OLIVE v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Marshall County**
**No. 17-CR-139PC          Forest A. Durard, Jr., Judge**

_____

**No. M2023-00719-CCA-R3-PC**
_____

A Marshall County jury convicted the Petitioner, Jeffrey Neal Olive, of second degree murder, and he was sentenced to a term of twenty years. Thereafter, the Petitioner filed for post-conviction relief, alleging that his trial counsel was ineffective and that he was denied his rights to a fair trial and due process of law. The post-conviction court denied the petition, and the Petitioner appealed. On appeal, the Petitioner asserts that trial counsel was ineffective by (1) failing to thoroughly investigate the case and potential defenses; (2) failing to discuss with the Petitioner his right to testify and allow him to testify at trial; (3) failing to challenge various pieces of evidence; and (4) encouraging the jury to convict the Petitioner of the lesser-included offense of voluntary manslaughter instead of the charged offense of second degree murder. The Petitioner also alleges that his rights to a fair trial and due process of law were violated in the taking of a pretrial statement and the faulty preservation of evidence. Finally, the Petitioner argues that the cumulative effect of the errors warrants post-conviction relief. Upon our review, we respectfully affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right;**
**Judgment of the Circuit Court Affirmed**

TOM GREENHOLTZ, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and KYLE A. HIXSON, JJ., joined.

John M. Schweri, Columbia, Tennessee, for the appellant, Jeffrey Neal Olive.

Jonathan Skrmetti, Attorney General and Reporter; William C. Lundy, Assistant Attorney General; Robert J. Carter, District Attorney General; and William Bottoms, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## FACTUAL BACKGROUND

### A.    TRIAL PROCEEDINGS

In March 2019, the Petitioner was found guilty of the murder of his ex-wife, Mona Lisa Olive, and he was sentenced to a term of twenty years. As summarized by this court on direct appeal, the Petitioner went to the victim's home in the early afternoon of July 16, 2017. *See State v. Olive*, No. M2019-01379-CCA-R3-CD, 2021 WL 772635, at *1 (Tenn. Crim. App. Mar. 1, 2021), *perm. app. denied* (Tenn. Oct. 13, 2021). The victim lived with her sister, Debra Cheatham; her brother-in-law, Ricky Cheatham; and her brother-in-law's mother, Bernadine Woodard. *Id.*

The Petitioner and the victim had a heated discussion outside the home and then went into the kitchen. *Id.* Twenty or thirty minutes later, the occupants of the house heard a gunshot. *Id.* at *1-2. They then entered the kitchen and saw the victim lying on the floor. *Id.* The Petitioner was standing over the victim and holding what Mr. Cheatham thought was a .25 or .380 caliber gun. *Id.* at *1. The Petitioner said, "[Y]ou got what you deserved, bitch." *Id.* Ms. Woodard saw the Petitioner standing over the victim, slapping and shaking her, and "telling her to wake up, that he didn't hurt her that bad." *Id.* The victim later died after being taken to the hospital. *Id.* at *3.

On direct appeal, the Petitioner challenged the legal sufficiency of the evidence sustaining his conviction and the length of his sentence. *Id.* at *1, 4-6. This court affirmed the Petitioner's conviction and sentence.

### B.    POST-CONVICTION PROCEEDINGS

On January 24, 2022, the Petitioner filed a pro se petition for post-conviction relief. Post-conviction counsel was appointed, and counsel filed two amended petitions. Relevant to this appeal, the Petitioner argued that he was denied the effective assistance of counsel at trial. More specifically, he asserted that trial counsel failed to conduct an adequate pretrial investigation and failed to prepare for trial. He also alleged that trial counsel failed to present an adequate defense, including by not allowing the Petitioner to testify, presenting an alternative theory of the crime, or challenging specific evidence, including his statement to law enforcement. The Petitioner also alleged that his rights to a fair trial and due process of law were violated in the taking of a pretrial statement and the preservation of evidence. Finally, he asserted that the cumulative effect of the errors required reversing his convictions.

The post-conviction court held a hearing on January 30, 2023. Four witnesses testified at the hearing, including both of the Petitioner's trial counsel, a police detective, and the Petitioner himself. In relevant part, the substance of this testimony was as follows.

### 1. Forensic Evaluation

Lead counsel first testified about the Petitioner's mental health evaluation. When the Petitioner's case was pending in general sessions court, Dr. Jon Garrison, who was a certified forensic examiner and licensed clinical psychologist, conducted a forensic evaluation of the Petitioner. According to the evaluation, the Petitioner was competent to stand trial. While noting that an insanity defense could not be supported, the evaluation concluded that "there may [have been] grounds for diminished capacity."

After receiving the evaluation, lead counsel contacted Dr. Garrison to have him explain the possible grounds for diminished capacity. Dr. Garrison explained that the Petitioner "had said that he was so blackout drunk that he didn't remember any of it" and that Dr. Garrison questioned whether the Petitioner could form the requisite intent to commit the crime.

However, the Petitioner told counsel that he was not intoxicated and that "he had not been drinking at all"; therefore, counsel thought arguing diminished capacity would be "contradictory." As such, trial counsel "laid that aside as a possible aspect of our defense."

### 2. Petitioner's Statement to Law Enforcement

Lead counsel acknowledged that the Petitioner gave a pretrial statement to law enforcement and that he may have disclosed that he had problems reading and writing at some point. Lead counsel did not recall the extent of the Petitioner's literacy difficulties, noting that the Petitioner seemed to understand the letters trial counsel sent to him and that he wrote trial counsel multiple letters.

Lead counsel said that in the Petitioner's statement to Detective Tony Nichols, a portion of the statement was marked through, which stated, "And we was both messing with a .25 caliber pistol that belongs to [the victim]. It was her mother's gun. Me and [the victim] was messing with the gun and shouldn't have been." However, despite being marked through, the jury heard the entire statement. Lead counsel explained that the defense chose not to redact the statement because "it was the only place to say it was her mother's gun." Counsel discussed with the Petitioner before trial how the statement would be used. The defense used the fact that the Petitioner had left his gun in his vehicle to show that he was not there with the intent to harm the victim.

The Petitioner also called Detective Nichols to testify about the statement. The detective testified that he arrested the Petitioner after the shooting and took him to jail. The next day, the Petitioner wished to speak with him. The Petitioner initially said that he could not read and write, but then he said he could read and write "some." The Petitioner narrated his statement, and Detective Nichols wrote it and read it back to the Petitioner. The Petitioner asked for a portion of the statement to be redacted. Detective Nichols drew a line through the portion the Petitioner wanted removed but "left it so it could be read where there's no misunderstanding as [to] what was in it." Detective Nichols acknowledged reading the portion of the statement the Petitioner wanted redacted to the jury at trial.

During his own testimony, the Petitioner testified that he told trial counsel that he could not read or write. He said he had "educated [himself] quite a bit" since he started working on his case. The Petitioner denied reading his statement back to Detective Nichols, asserting that his reading and writing capabilities were "very low." However, he acknowledged that he wrote most of the letters he sent to the court and counsel.

The Petitioner said that when he gave his statement to Detective Nichols, the detective "was trying to put words in [his] mouth[.]" The Petitioner tried to tell the detective that the victim pulled a gun on him, but Detective Nichols insinuated that the Petitioner shot her. Accordingly, the Petitioner told Detective Nichols to put marks through the statement.

### 3.     Investigation of the Victim

Counsel next testified about their pretrial investigations of the victim. Before trial, the Petitioner told counsel about the victim's criminal history. Lead counsel drove to Maury County and asked the clerk's office for her criminal records. However, no criminal records could be located. The Petitioner also told counsel that the victim had mental health issues, but trial counsel was unable to verify that claim.

After being shown records by post-conviction counsel, lead counsel agreed that in 2007 and 2009, the victim had incidents involving domestic violence that did not result in a conviction. Counsel also agreed that in October 2009, the victim pled guilty to the Class A misdemeanor of attempted reckless endangerment. According to the complaint, the Petitioner said the victim was trying to take pills and commit suicide, but the victim denied having any intention of harming herself. Lead counsel denied that the victim's prior incidents of violence towards the Petitioner would have added weight to the Petitioner's claim of self-defense, especially given the physical evidence and the witnesses' observations of the Petitioner saying the victim got what she deserved.

4

Counsel acknowledged that the Petitioner said the victim was addicted to opiates and scheduled narcotics and that the autopsy report reflected the victim was positive for oxycodone and noroxycodone. Lead counsel could not confirm whether the victim had a prescription for opiates. The victim's autopsy did not show that she was positive for alcohol.

During his testimony, the Petitioner alleged that trial counsel failed to investigate the victim's background. He stated that he told trial counsel about the victim's mental health and substance use issues, but no proof regarding these issues was introduced at trial. He claimed that the victim was living with the Cheathams because she had been released from substance use treatment and was trying "to get herself straightened out."

### 4.   Petitioner's Decision to Testify

During trial preparations, trial counsel discussed with the Petitioner his right to testify at trial. Counsel informed the Petitioner that it was his decision whether to testify, and they advised him to make his final decision after hearing the State's proof. Co-counsel noted that the Petitioner gave them conflicting versions of events, such as "[o]ne time he told us that [the victim] shot herself, another time it was they were playing with the gun and the gun accidentally went off[.]" However, when counsel confronted the Petitioner by saying the physical evidence did not support his version of events, the Petitioner adjusted his story. Counsel "advised [the Petitioner] not to testify based on his prior inconsistencies[.]"

During his own testimony, the Petitioner testified that trial counsel told him not to testify and never told him it was his decision whether to testify. He did not recall having a *Momon* hearing at trial.

### 5.   Trial Evidence

Lead counsel also discussed some of the evidence offered at trial. Lead counsel confirmed that Detective Nichols did not identify the Petitioner at trial. However, three other witnesses had identified the Petitioner, so "there was no question who we were talking about."

Lead counsel recalled that an expert testified about gunshot residue being present on the Petitioner's t-shirt and shorts. The expert said that he had found particles of gunshot residue on certain portions of the Petitioner's clothing but clarified "that is [not] necessarily where they were deposited because this clothing has all been in a bag together." Lead counsel acknowledged that the way the Petitioner's clothing was preserved impacted the

ability to evaluate the locations of gunshot residue on the clothing individually. The Petitioner's DNA and fingerprints were not found on the gun.

### 6.     Arguments to the Jury

Finally, lead counsel admitted that he argued to the jury that "we are not asking you to let [the Petitioner] go home today. We are asking you to convict him, but not of second degree murder." Lead counsel explained that the defense strategy at trial was that the Petitioner was guilty of voluntary manslaughter instead of second degree murder and that the Petitioner agreed with that strategy.

During his post-conviction testimony, the Petitioner asserted that trial counsel "told the jury to convict me." He initially denied speaking with counsel about arguing for a lesser-included offense conviction as part of their trial strategy. However, upon further questioning, the Petitioner acknowledged having conversations with co-counsel about pursuing a conviction on the lesser-included offense of voluntary manslaughter instead of the charged offense of second degree murder. The Petitioner said that second degree murder required a knowing mental state and that he never intended to harm the victim.

### C.     POST-CONVICTION COURT'S RULING AND APPEAL

On April 19, 2023, the post-conviction court entered a written order denying relief. The court credited the testimony of trial counsel. Regarding the Petitioner's multiple claims of ineffective assistance of counsel, the court generally found that the Petitioner failed to prove his factual allegations by clear and convincing evidence.

Relevant to this appeal, the post-conviction court held that the victim's prior criminal and mental health records did not constitute newly discovered evidence demonstrating the Petitioner's actual innocence. It also found, however, that the Petitioner failed to introduce proof of the mental health records and that further investigation into the victim's criminal history would not have affected the verdict. The post-conviction court concluded that the Petitioner was fully advised of his right to testify. Finally, it found that trial counsel and the Petitioner met and agreed on a trial strategy to pursue a conviction on a lesser-included offense.

The Petitioner filed a timely notice of appeal on May 12, 2023.

## ANALYSIS

The Tennessee Post-Conviction Procedure Act provides an avenue for relief "when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103 (2018). A post-conviction petitioner has the burden of proving his or her allegations of fact with clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f) (2018). For evidence to be clear and convincing, "it must eliminate any 'serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" *Arroyo v. State*, 434 S.W.3d 555, 559 (Tenn. 2014) (quoting *State v. Sexton*, 368 S.W.3d 371, 404 (Tenn. 2012)).

In this appeal, the Petitioner raises two sets of issues. Taking the issues out of order, he asserts that his rights to a fair trial and due process of law were violated by the admission of his statements to law enforcement and by the admission of his clothing, which he argues was contaminated due to how it was preserved for testing. He also contends that he was denied the effective assistance of counsel both in the pretrial investigation of his case and at trial. We address each of these issues in turn.

### A. DENIAL OF DUE PROCESS AND A FAIR TRIAL

The Petitioner asserts that he was denied the right to a fair trial and due process of law in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution. He argues that his statement to Detective Nichols was inadmissible because it was not knowingly given. He also asserts that the way his clothing was preserved for forensic testing contaminated the evidence and prejudiced his ability to defend himself. In response, the State argues that these claims were waived because they were not presented on direct appeal. Although the post-conviction court did not specifically address these issues in its order, we agree with the State.

"[A] post-conviction claim may be dismissed if it has been waived." *Keene v. State*, No. E2022-01410-CCA-R3-PC, 2023 WL 5978223, at *3 (Tenn. Crim. App. Sept. 14, 2023), *perm. app. denied* (Tenn. Feb. 13, 2024). Tennessee Code Annotated section 40-30-106(g) provides that "[a] ground for relief is waived if the petitioner personally or through an attorney failed to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented." We have recognized that "section 40-30-106(g) seeks to prevent post-conviction proceedings from being used as a substitute for direct review and appeal. Essentially, a defendant may not withhold constitutional claims at trial for later litigation in post-conviction proceedings." *Woodard v. State*, No. M2022-00162-CCA-R3-PC, 2022 WL 4932885, at *3 (Tenn. Crim. App. Oct. 4, 2022), *no perm. app. filed*; *see also* Tenn. Code Ann. § 40-30-110(f) ("There

7

is a rebuttable presumption that a ground for relief not raised before a court of competent jurisdiction in which the ground could have been presented is waived."); *Brown v. State*, 489 S.W.2d 268, 270 (Tenn. Crim. App. 1972) ("Our procedure does not permit one the practice of deliberately withholding the timely assertion of his Constitutional rights upon his trial, to save them back for post-conviction attack in the event of a conviction.").

In this case, the record on appeal is not clear whether the Petitioner asserted these claims during the original trial court proceedings. He certainly could have done so, however, because these claims existed at the time of his trial. Even if he did raise these claims during his original trial, the Petitioner failed to raise them in his direct appeal. Because these claims could have been previously presented to a court of competent jurisdiction for resolution, we conclude that the Petitioner has waived these stand-alone claims as grounds for post-conviction relief. *See Woodard*, 2022 WL 4932885, at *3; *Polochak v. State*, No. M2018-01524-CCA-R3-PC, 2019 WL 5692112, at *5 (Tenn. Crim. App. Nov. 4, 2019), *perm. app. denied* (Tenn. Mar. 26, 2020).

## B.    INEFFECTIVE ASSISTANCE OF COUNSEL

The Petitioner next alleges that his trial counsel provided ineffective assistance of counsel. Article I, section 9 of the Tennessee Constitution establishes that every criminal defendant has "the right to be heard by himself and his counsel." Similarly, the Sixth Amendment to the United States Constitution, made applicable to the states by the Fourteenth Amendment, guarantees that all criminal defendants "shall enjoy the right . . . to have the [a]ssistance of [c]ounsel." "These constitutional provisions guarantee not simply the assistance of counsel, but rather the reasonably effective assistance of counsel." *Nesbit v. State*, 452 S.W.3d 779, 786 (Tenn. 2014). Accordingly, a petitioner's claim that he or she has been deprived "of effective assistance of counsel is a constitutional claim cognizable under the Post-Conviction Procedure Act." *Moore v. State*, 485 S.W.3d 411, 418 (Tenn. 2016); *see also Howard v. State*, 604 S.W.3d 53, 57 (Tenn. 2020).

"To prevail on a claim of ineffective assistance of counsel, a petitioner must establish both that counsel's performance was deficient and that counsel's deficiency prejudiced the defense." *Moore*, 485 S.W.3d at 418-19 (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996)). A petitioner may establish that counsel's performance was deficient by showing that "'counsel's representation fell below an objective standard of reasonableness.'" *Garcia v. State*, 425 S.W.3d 248, 256 (Tenn. 2013) (quoting *Strickland*, 466 U.S. at 688). As our supreme court has also recognized, this court must look to "all the circumstances" to determine whether counsel's performance was reasonable and then objectively measure this performance "against the professional norms prevailing at the time of the representation." *Kendrick v. State*, 454 S.W.3d 450, 457 (Tenn. 2015) (quoting *Strickland*, 466 U.S. at 688).

8

"If the advice given or services rendered by counsel are 'within the range of competence demanded of attorneys in criminal cases,' counsel's performance is not deficient." *Phillips v. State*, 647 S.W.3d 389, 407 (Tenn. 2022) (quoting *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)). Notably, because this inquiry is highly dependent on the facts of the individual case, "[c]onduct that is unreasonable under the facts of one case may be perfectly reasonable under the facts of another." *State v. Burns*, 6 S.W.3d 453, 462 (Tenn. 1999).

In addition, a petitioner must establish that he or she has been prejudiced by counsel's deficient performance such that the performance "'render[ed] the result of the trial unreliable or the proceeding fundamentally unfair.'" *Kendrick*, 454 S.W.3d at 458 (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993)). In other words, a petitioner "must establish 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Davidson v. State*, 453 S.W.3d 386, 393-94 (Tenn. 2014) (quoting *Strickland*, 466 U.S. at 694). "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Howard*, 604 S.W.3d at 58 (quoting *Strickland*, 466 U.S. at 694).

Appellate review "of an ineffective assistance of counsel claim is a mixed question of law and fact that this [c]ourt reviews de novo." *Phillips*, 647 S.W.3d at 400 (citations omitted). "Appellate courts must generally defer to a post-conviction court's findings concerning witness credibility, the weight and value of witness testimony, and the resolution of factual issues presented by the evidence." *Kendrick*, 454 S.W.3d at 457. As such, we "are bound by the post-conviction court's underlying findings of fact unless the evidence preponderates against them." *Whitehead v. State*, 402 S.W.3d 615, 621 (Tenn. 2013). On the other hand, "we accord no presumption of correctness to the post-conviction court's conclusions of law, which are subject to purely de novo review." *Phillips*, 647 S.W.3d at 400 (citations omitted).

In this appeal, the Petitioner specifically argues that trial counsel rendered ineffective assistance in the following ways:

1.    trial counsel failed to investigate a diminished capacity defense;

2.    trial counsel failed to investigate whether his illiteracy rendered his statement to Detective Nichols not knowing and subject to suppression;

3.    trial counsel failed to investigate the victim's criminal, substance use, and mental health histories;

9

4. trial counsel failed to discuss with the Petitioner his right to testify and allow him to testify at trial;

5. trial counsel failed to investigate whether the packaging of the Petitioner's clothing when it was sent for forensic testing led to contamination that could have resulted in the exclusion of the evidence;

6. trial counsel failed to challenge Detective Nichols's failure to identify the Petitioner at trial;

7. trial counsel failed to argue that the Petitioner's fingerprints and DNA were not found on the murder weapon; and

8. trial counsel encouraged the jury to convict the Petitioner of the lesser-included offense of voluntary manslaughter instead of the charged offense of second degree murder.[1]

We address each of these issues below.

## 1. Failure to Investigate Diminished Capacity Defense

The Petitioner first asserts that trial counsel should have "investigated whether the Petitioner's diminished capacity could be due to education and ability to read and comprehend in addition to intoxication,"[2] maintaining that "Dr. Garrison confirmed he had diminished capacity." The State responds that the Petitioner has waived this issue by failing to raise it in his post-conviction petition or at the hearing. We agree with the State.

A post-conviction petitioner generally waives a ground for relief where he or she does not include the ground in the petition. *See* Tenn. Code Ann. § 40-30-110(c) ("Proof upon the petitioner's claim or claims for relief shall be limited to evidence of the allegations

---

[1]    Although the Petitioner raised several claims for relief under the heading of ineffective assistance of counsel in his original and amended post-conviction petitions, he presents only these issues on appeal. As such, our opinion here focuses only on the issues raised for decision in this court. *See* Tenn. R. App. P. 13(b) ("Review generally will extend only to those issues presented for review.").

[2]     Our supreme court has explained:

[D]iminished capacity is not a defense to a criminal charge, but evidence of diminished capacity is admissible to negate mens rea. Such evidence is usually introduced through expert testimony showing that a defendant was incapable of forming a criminal intent by virtue of an impaired mental condition, such as voluntary intoxication.

*State v. Adams*, 405 S.W.3d 641, 660-61 (Tenn. 2013).

10

of fact in the petition."); Tenn. Sup. Ct. R. 28, § 8(D)(4) ("The hearing shall be limited to issues raised in the petition."). However, the petitioner may amend the petition within thirty days or at any other time upon a showing of good cause. *See* Tenn. Code Ann. § 40-30-107(b)(2). Also, the post-conviction court may permit an amendment to the petition, even during the evidentiary hearing, "when the presentation of the merits of the cause will otherwise be subserved." Tenn. Sup. Ct. R. 28, § 8(D)(5).

Importantly, though, this court does not have the authority to consider a post-conviction issue that was not raised in the original petition or a recognized amendment. *See State v. Bristol*, 654 S.W.3d 917, 927 n.4 (Tenn. 2022) ("The legislature has eliminated this discretion [to consider unpresented or unpreserved issues] in post-conviction proceedings."). Indeed, our supreme court has made clear that we may consider a post-conviction issue on appeal *only* when that issue (1) was formally raised in the post-conviction petition or an amendment; or (2) was argued at the evidentiary hearing *and* was decided by the post-conviction court without objection by the State. *See Holland v. State*, 610 S.W.3d 450, 458 (Tenn. 2020) ("Tennessee appellate courts may only consider issues that were not formally raised in the post-conviction petition if the issue was argued at the post-conviction hearing and decided by the post-conviction court without objection.").

The first amended petition mentioned the issue of diminished capacity and the second amended petition incorporated all of the issues mentioned in the original petition. However, at the beginning of the post-conviction hearing, the court permitted post-conviction counsel to outline the specific issues to be addressed at the hearing. Post-conviction counsel went through each issue in the petition and stated whether the issue was being pursued or abandoned at the hearing. The issue of diminished capacity was not listed among the issues to be addressed at the hearing, nor was it among the issues post-conviction counsel argued before the court. Additionally, the post-conviction court did not rule on any issue concerning the Petitioner's possible diminished capacity. Therefore, we conclude that the Petitioner has waived this claim for relief. *See Holland*, 610 S.W.3d at 458.

### 2. Failure to Investigate the Petitioner's Literacy

The Petitioner next asserts that trial counsel was ineffective by failing to investigate whether his illiteracy affected his ability to make a "knowing statement" to Detective Nichols or rendered his statement unreliable. More specifically, he asserts that he could not make a written statement and that he depended upon a law enforcement detective to write his statement accurately. In addition, when he told the detective that he wanted parts

of the statement removed, he could not determine or verify what had been removed.  As such, he argues, trial counsel should have moved to suppress the statement.

The Petitioner did not raise this issue in his post-conviction petition.  Although he asked trial counsel and Detective Nichols questions concerning his ability to read, the Petitioner did not argue to the post-conviction court that his inability to read affected his ability to make a "knowing statement."  The post-conviction court did not rule on any issue regarding trial counsel's ineffectiveness concerning their failure to challenge the admissibility of the Petitioner's statement to the detective.  Therefore, we conclude that the Petitioner has waived this claim for relief.  *See Holland*, 610 S.W.3d at 458.

### 3.      Failure to Investigate the Victim's Background

The Petitioner also argues that trial counsel was ineffective by failing to investigate the victim's criminal, substance use, and mental health histories.  He asserts that the presentation of this evidence "would have presented a very different picture of [the victim] to the jury," presumably to show that the victim provoked him to shoot her.  For two reasons, we respectfully disagree.

First, and with respect to the victim's mental health history, the Petitioner argues that his counsel "could have issued subpoenas and obtained [c]ertified [c]opies of her medical records that would demonstrate that she had pre-existing mental health disease, that this contributed to her reckless behaviors, and that she needed to take her psychiatric medications to maintain mood stability."  In its order, however, the post-conviction court found that the Petitioner failed to introduce any of the victim's mental health records to establish what information might have been contained in those records.

"When a claim of ineffective assistance of counsel is predicated upon a failure to investigate, the petitioner is obligated to show what a reasonable investigation would have revealed."  *Webb v. State*, No. E2006-02352-CCA-R3-PC, 2007 WL 2570201, at *14 (Tenn. Crim. App. Sept. 7, 2007), *no perm. app. filed*.  Thus, in the context of medical records, a petitioner must first establish that the medical records existed.  *See Ford v. State*, No. W2010-01835-CCA-R3-PC, 2012 WL 601214, at *5 (Tenn. Crim. App. Feb. 24, 2012), *perm. app. dismissed* (Tenn. Aug. 14, 2012).  The petitioner must then also show what information was contained in those records and how that information would have affected the outcome of the trial.  *Gray v. State*, No. W2000-00645-CCA-R3-PC, 2001 WL 13228, at *4 (Tenn. Crim. App. Jan. 5, 2001), *perm. app. denied* (Tenn. June 11, 2001).

As we have emphasized, a petitioner can only make these showings by introducing the medical records at the post-conviction hearing.  Without these records being introduced at the hearing, the post-conviction court can do nothing more than speculate about their

12

contents or their effect on the verdict. *See Black v. State*, 794 S.W.2d 752, 757-58 (Tenn. Crim. App. 1990). However, "speculation does not equate to clear and convincing evidence." *Patrick v. State*, No. W2014-00909-CCA-R3-PC, 2014 WL 6612559, at *6 (Tenn. Crim. App. Nov. 24, 2014), *perm. app. denied* (Tenn. Mar. 12, 2015). And "[n]either this court nor a post-conviction court may speculate about the substance of the records" that are "not introduced at the evidentiary hearing," *Millan v. State*, No. E2021-00366-CCA-R3-PC, 2023 WL 1489780, at *33 (Tenn. Crim. App. Feb. 3, 2023) (citing *Black*, 794 S.W.2d at 757-58), *perm. app. filed.* As such, the Petitioner's failure to introduce the victim's mental health records at the post-conviction hearing is fatal to his claim. *See Grimes v. State*, No. W2018-01665-CCA-R3-PC, 2020 WL 249228, at *13 (Tenn. Crim. App. Jan. 16, 2020) ("If a petitioner argues that trial counsel rendered ineffective assistance of counsel by failing to argue a legal issue or present certain evidence, either testimony or exhibits, a repeat of such failure at the post-conviction hearing will most likely result in the failure to succeed on a claim of ineffective assistance of counsel."), *perm. app. denied* (Tenn. Aug. 5, 2020).

Second, the Petitioner has not shown how the victim's alleged criminal or substance use history would reasonably have produced a different result at trial. *See Davidson*, 453 S.W.3d at 393-94. In its order denying relief, the post-conviction court noted that the evidence of the victim's prior criminal behavior, "if admissible at all under the first aggressor theory," occurred eight and ten years before the victim's death and that there were no other incidents of violence during the intervening years. The court also observed that this evidence did not affect other evidence of guilt, such as Mr. Cheatham seeing the Petitioner standing over the victim, saying "that you got what you deserved, bitch." As such, the court concluded that evidence of the victim's history would not have had a reasonable probability of affecting the jury's verdict.

The record does not preponderate against the post-conviction court's findings. In the Petitioner's direct appeal, he likewise argued that the victim provoked his actions. In addressing the claim, we observed that the other evidence in the case "call[ed] into question" the Petitioner's claim:

> Moreover, the evidence calls into question several aspects of the Defendant's assertion. Although there was evidence that the Defendant and victim argued, it appears that the argument had subsided by the time they entered the kitchen. The absence of stippling on the victim's skin and the trajectory of the bullet suggests that the Defendant got up from the kitchen table, backed away, and then fired at the victim. The Defendant was overheard saying, "You got what you deserved, bitch." The evidence also suggests that the Defendant concealed the weapon. In addition, the Defendant told the police the shooting was an accident; he did not claim to have been provoked. A

rational trier of fact could have found that any provocation suffered by the Defendant was inadequate.

*Olive*, 2021 WL 772635, at *4. The Petitioner does not address this other evidence or show how the victim's alleged criminal and substance use history otherwise provoked his actions. As such, we conclude that the post-conviction court properly held that the Petitioner failed to show that the outcome of the trial would have been different had trial counsel further investigated the victim's criminal and substance use history.

### 4. Failure to Discuss with the Petitioner His Right to Testify

The Petitioner maintains that trial counsel was ineffective by failing to allow the Petitioner to testify and have meaningful discussions with the Petitioner about his right to testify. The State acknowledges that the Petitioner preserved this issue by including it in his post-conviction petition. However, it asserts that the claim is without merit because the Petitioner validly waived his right to testify during the *Momon* colloquy at trial.[3] We agree with the State.

"This [c]ourt has previously recognized that trial counsel may make a reasonable strategic decision to advise a defendant not to testify when counsel believes that the defendant will not make 'a good witness.'" *Hill v. State*, No. E2022-01061-CCA-R3-PC, 2023 WL 5216981, at *7 (Tenn. Crim. App. Aug. 15, 2023) (citation omitted), *perm. app. denied* (Tenn. Jan. 10, 2024). For example, we have recognized this principle when trial counsel believed that the petitioner's testimony would not have been credible. *See Butler v. State*, No. E2018-00914-CCA-R3-PC, 2019 WL 4464652, at *12 (Tenn. Crim. App. Sept. 18, 2019), *perm. app. denied* (Tenn. Feb. 19, 2020). We have also recognized this principle when trial counsel's concerns about witness credibility stemmed from inconsistencies in the petitioner's previous version of events. *E.g.*, *Burgess v. State*, No. M2020-00028-CCA-R3-PC, 2021 WL 928475, at *22 (Tenn. Crim. App. Mar. 11, 2021), *no perm. app. filed*.

In this case, trial counsel testified that they discussed the possibility of testifying with the Petitioner. Because the Petitioner kept changing his story, counsel was concerned his testimony would damage the defense. As such, trial counsel advised the Petitioner

---

[3] In *Momon v. State*, 18 S.W.3d 152, 162 (Tenn. 1999), our supreme court "adopted a prophylactic procedure designed to ensure that a defendant's waiver of the fundamental right to testify is voluntary, knowing, and intelligent." *Mobley v. State*, 397 S.W.3d 70, 90 (Tenn. 2013). In this procedure, trial counsel may make inquiry of the defendant in open court outside the presence of the jury, or the defendant may execute a written waiver of the right to testify. *Momon*, 18 S.W.3d at 162, 175. In this case, the trial court and trial counsel conducted the *Momon* hearing with the Petitioner in open court after the conclusion of the State's proof.

14

against testifying, though they made clear that the decision to testify was the Petitioner's to make.

Although the Petitioner alleged that he was never advised of his right to testify and that trial counsel told him not to testify, the post-conviction court accredited the testimony of trial counsel. Moreover, the court also found that a *Momon* hearing was conducted at trial and that "the Petitioner was fully informed of his right to testify." This court has recognized that where a petitioner asserted his right not to testify after a *Momon* hearing at trial, the petitioner's argument that he was denied the right to testify may lack credibility. *Irwin v. State*, No. E2020-01598-CCA-R3-PC, 2021 WL 4767980, at *5 (Tenn. Crim. App. Oct. 13, 2021), *perm. app. denied* (Tenn. Feb. 9, 2022). As such, we conclude that the record supports the findings of the post-conviction court. The Petitioner is not entitled to relief on this ground.

### 5.    Failure to Investigate the Preservation of Evidence

The Petitioner next argues that trial counsel was ineffective by failing to investigate whether the manner in which the Petitioner's clothing was sent for forensic testing led to contamination that could have resulted in the exclusion of the evidence at trial. The Petitioner did not raise this issue in his original or any amended post-conviction petition. Although he asked questions about the packaging of his clothing and the contamination of gunshot residue on the clothing, the Petitioner made no arguments about this issue to the post-conviction court, and the post-conviction court subsequently did not rule on this issue. Therefore, we conclude that the Petitioner has waived this claim for relief. *See Holland*, 610 S.W.3d at 458.

### 6.    Failure to Challenge the Lack of Identification at Trial

In his next issue, the Petitioner asserts that trial counsel was ineffective by failing to challenge Detective Nichols's failure to identify the Petitioner at trial. The Petitioner did not raise this issue in his post-conviction petition. Although he asked questions about Detective Nichols's failure to identify him at trial, the Petitioner made no arguments about this issue to the post-conviction court, and the post-conviction court did not issue a ruling on this issue. Therefore, we conclude that the Petitioner has waived this claim for relief. *See Holland*, 610 S.W.3d at 458.

### 7.    Failure to Argue the Absence of Fingerprints or DNA Evidence

The Petitioner contends that trial counsel was ineffective by failing to argue that his fingerprints and DNA were not found on the murder weapon. The Petitioner did not raise

this issue in his post-conviction petition. Although he asked some questions about this issue, the Petitioner made no arguments about this issue to the post-conviction court, and the post-conviction court did not rule on this issue. Therefore, we conclude that the Petitioner has waived this claim for relief. *See Holland*, 610 S.W.3d at 458.

### 8.      Strategy of Encouraging Conviction on Lesser Offense

Finally, the Petitioner maintains that trial counsel was ineffective by encouraging the jury to convict the Petitioner of the lesser-included offense of voluntary manslaughter instead of the charged offense of second degree murder. In his second amended post-conviction petition, the Petitioner asserted that "trial strategy development was consistent with ineffective assistance of counsel and contributed to [P]etitioner's conviction." The post-conviction court found that this allegation was "really a vague allegation with no factual support" and that the proof at the hearing did not "show a reasonable probability of a different outcome."

As the United States Supreme Court has recognized, "[t]he object of an ineffectiveness claim is not to grade counsel's performance." *Strickland*, 466 U.S. at 697. As such, "the petitioner is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy, and cannot criticize a sound, but unsuccessful, tactical decision made during the course of the proceedings." *Dellinger v. State*, 279 S.W.3d 282, 295 (Tenn. 2009) (citation and internal quotation marks omitted). Indeed, the fact that a particular strategy or tactic "failed or hurt the defense, does not, standing alone, establish unreasonable representation." *House v. State*, 44 S.W.3d 508, 515 (Tenn. 2001). In this regard, the "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable[.]" *Strickland*, 466 U.S. at 690.

In this case, the post-conviction court specifically credited the testimony of counsel as to their meetings with the Petitioner and their development of the proposed trial strategy. Counsel testified that given the overwhelming proof against the Petitioner, they developed a trial strategy of pursuing a conviction on the lesser-included offense of voluntary manslaughter. They testified that they discussed this strategy with the Petitioner, and the Petitioner agreed to pursue this strategy at trial.

"We will not deem counsel to have been ineffective merely because a different strategy or procedure might have produced a more favorable result." *Runions v. State*, No. M2022-01347-CCA-R3-PC, 2023 WL 6534179, at *8 (Tenn. Crim. App. Oct. 6, 2023) (citation omitted), *perm. app. denied* (Tenn. Mar. 6, 2024). Upon the testimony credited by the post-conviction court, the record shows that trial counsel developed a reasonable trial strategy after adequate investigation and that the Petitioner agreed with the strategy. The Petitioner is not entitled to relief on this ground.

## C.    CUMULATIVE ERROR

Finally, the Petitioner contends that the cumulative effect of the errors should warrant post-conviction relief.  This court has recognized that, "in the context of an ineffective assistance of counsel claim, cumulative error examines the prejudicial effect of multiple instances of deficient performance." *Harris v. State*, No. E2022-00446-CCA-R3-PC, 2022 WL 17729352, at *9 (Tenn. Crim. App. Dec. 16, 2022) (citation and internal quotation marks omitted), *perm. app. denied* (Tenn. Apr. 18, 2023).  Therefore, a petitioner "who has failed to show that he received constitutionally deficient representation on any single issue may not successfully claim that his constitutional right to counsel was violated by the cumulative effect of counsel's errors."  *Newton v. State*, No. M2016-02240-CCA-R3-PC, 2017 WL 5901032, at *10 (Tenn. Crim. App. Nov. 29, 2017), *perm. app. denied* (Tenn. Mar. 14, 2018).

In this case, the record does not reflect any deficient performance by trial counsel. As such, no cumulative error claim is possible.  *See Conaser v. State*, No. M2023-00271-CCA-R3-PC, 2024 WL 244964, at *7 (Tenn. Crim. App. Jan. 23, 2024), *no perm. app. filed*; *Martin v. State*, No. E2022-00688-CCA-R3-PC, 2023 WL 3361543, at *5 (Tenn. Crim. App. May 11, 2023) ("[C]umulative error does not apply in post-conviction cases where the petitioner has failed to show any instance of deficient performance by counsel."), *perm. app. denied* (Tenn. Sept. 11, 2023).  We conclude that the Petitioner is not entitled to relief on the basis of cumulative error.

## CONCLUSION

In summary, we hold that the post-conviction court properly found that the Petitioner was not denied the effective assistance of counsel during his trial.  We also hold that the Petitioner's stand-alone claims for alleged violations of the right to a fair trial and due process of law have been waived.  Accordingly, because the Petitioner's conviction or sentence is not void or voidable because of the violation of a constitutional right, we respectfully affirm the denial of post-conviction relief in all respects.

_____
TOM GREENHOLTZ, JUDGE

17