# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### October 23, 2024 Session Heard at Chattanooga[1]

## BYRON HARTSHAW v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Knox County**
**No. 124073    Steven W. Sword, Judge**

_____

**No. E2023-01565-CCA-R3-PC**

_____

A Knox County jury convicted the Petitioner, Byron Hartshaw, of two counts of robbery, two counts of aggravated robbery, and two counts of aggravated burglary, and the trial court sentenced him to serve an effective term of fifteen years. After that, he filed a petition for post-conviction relief alleging that he was denied the effective assistance of counsel when trial counsel failed to prepare a defense, failed to clarify a pretrial ruling, and failed to object during cross-examination, opening statements, and closing arguments. He also argued that the cumulative effect of trial counsel's deficiencies was sufficient to establish that he was denied the effective assistance of counsel. After a hearing, the post-conviction court denied the petition, and the Petitioner appealed. Upon our review, we respectfully affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right;**
**Judgment of the Criminal Court Affirmed**

TOM GREENHOLTZ, J., delivered the opinion of the court, in which JILL BARTEE AYERS and KYLE A. HIXSON, JJ., joined.

Autumn M. Bowling, Knoxville, Tennessee, for the appellant, Byron Hartshaw.

Jonathan Skrmetti, Attorney General and Reporter; Katherine C. Redding, Senior Assistant Attorney General; Charme P. Allen, District Attorney General; and TaKisha Fitzgerald, Assistant District Attorney General, for the appellee, State of Tennessee.

---

[1]       Oral argument in this case was heard at the University of Tennessee at Chattanooga. The court extends its sincerest appreciation to the University for its hospitality during the session and to the lawyers who engaged with the students following the argument of this case.

# OPINION

# FACTUAL BACKGROUND

## A.    ORIGINAL CHARGES AND PRE-TRIAL PROCEEDINGS

This case arises from the assault and robbery of the Petitioner's uncle, Robert Beasley.  The Petitioner and his co-defendant, Gary Lee Emory, stole the victim's wallet, some money, a bottle of liquor, and a package of cigarettes.  *State v. Hartshaw*, No. E2019-02200-CCA-R3-CD, 2021 WL 5861278, at *1 (Tenn. Crim. App. Dec. 10, 2021), *perm. app. denied* (Tenn. Apr. 14, 2022).  The Petitioner allegedly pointed a gun at or near the victim, and Mr. Emory was seen on video surveillance with a hammer.

A Knox County grand jury charged the Petitioner for two counts of aggravated robbery with a deadly weapon (Counts 1 and 2), two counts of aggravated robbery accomplished by the display of an article fashioned to lead the victim to reasonably believe it to be a deadly weapon (Counts 3 and 4), two counts of aggravated burglary (Counts 5 and 6), and one count of employing a firearm during the commission of a dangerous felony.

About three months before trial, the trial court held a hearing on Mr. Emory's motion for a bill of particulars.  In his motion, Mr. Emory sought to clarify what the State characterized as the "deadly weapon" in Counts 1 through 4 of the indictment.  Specifically, Mr. Emory sought to clarify whether the State would include the hammer as a deadly weapon or as an item "fashioned or used as" a deadly weapon.  Ultimately, the State informed the trial court that, from its understanding of the preliminary hearing testimony, it believed that the deadly weapon was the handgun and not the hammer.  As such, the trial court found that there was no further need for a bill of particulars because the hammer was not referred to in the indictment as the deadly weapon.  *See Hartshaw*, 2021 WL 5861278, at *1.

Later that day, the State listened to the preliminary hearings and emailed Mr. Emory's attorney to inform him that it was no longer the State's position that the gun was the only deadly weapon.  The State also asserted that it did not have to disclose its theory of the case in a bill of particulars. Mr. Emory's counsel forwarded the email to trial counsel, who, after researching the issue and discussing it with Mr. Emory's counsel, decided that

the State should alert the court about the change in its position.[2]  The parties did not discuss this issue again until the jury charge conference.  *See id.* at *2.

## B.    TRIAL PROCEEDINGS

The State called several witnesses throughout the trial.  The proof established that the victim received a monthly supplemental benefits check.  The victim lived with a roommate, and the Petitioner and Mr. Emory sometimes spent the night with them.  The victim cashed the check, made some payments, and kept the remaining money on his person.

On the night of October 1, 2016, Mr. Emory and the Petitioner entered the victim's apartment.  The two men then decided to rob the victim by knocking him out of his wheelchair, searching his body, and using a hammer and gun to scare him.  The men stole money, cigarettes, and liquor from the victim.

Throughout the trial, the hammer was mentioned several times.  First, during opening statements, the State asserted that Mr. Emory used a hammer to control the victim during the robbery.  Later, the State cross-examined Mr. Emory and asked him multiple questions about his use of the hammer.  *See Hartshaw*, 2021 WL 5861278, at *8.  Finally, in its closing argument, the State alleged that Mr. Emory had a hammer in his hand and acted like he was going to hit the victim with it.  Trial counsel did not object to any of these mentions of the hammer.

Ultimately, after a conference discussing jury instructions, the trial court decided to specifically designate the gun as the deadly weapon for Counts 1 and 2 of aggravated robbery.  For Counts 3 and 4, the court instructed "that the defendant accomplished [the robbery] by [the] display of any article fashioned to lead the alleged victim to reasonably believe it to be a deadly weapon."  *Hartshaw*, 2021 WL 5861278, at *9.  The trial court did not limit the "article" to the gun.

A Knox County jury found the Petitioner guilty of two counts of robbery, two counts of aggravated robbery, and two counts of aggravated burglary.  The trial court sentenced

---

[2]     In our opinion on the Petitioner's direct appeal, we stated that "[i]t appears that neither the trial court nor Defendant Hartshaw's counsel was informed of this change in the State's position[.]" *Hartshaw*, 2021 WL 5861278, at *2.  Of course, this statement was based on information contained in the record at that time.  With the benefit of trial counsel's testimony during the later post-conviction hearing, it is now clear that trial counsel was aware of the State's change in position.

3

the Petitioner to serve a term of fifteen years. This court affirmed the Petitioner's convictions and sentences on direct appeal. *See Hartshaw*, 2021 WL 5861278, at *22.

## C.   POST-CONVICTION PROCEEDINGS

On March 13, 2022, the Petitioner filed a petition for post-conviction relief, alleging that he was denied the effective assistance of counsel at trial. Relevant to this appeal, the Petitioner alleged that trial counsel was ineffective when he failed to prepare a defense to the State's theory that the hammer was a deadly weapon—or an article fashioned to lead the victim to believe it to be a deadly weapon—and when he failed to clarify a pretrial ruling that regarded the parties' permitted use of the hammer. In addition, he asserted that trial counsel was ineffective when he failed to object: (1) to the discussion of the hammer in the State's opening statement; (2) to the questions seeking to clarify Mr. Emory's reference to the use of the hammer during cross-examination; and (3) to the State's allegations that the hammer was used as a deadly weapon in their closing argument.

The post-conviction court held a hearing on October 5, 2023, during which the Petitioner's trial counsel testified.

### 1.   Trial Counsel's Testimony

Trial counsel testified that he principally practiced criminal defense and had tried eight or nine criminal trials throughout his career. During his representation of the Petitioner, trial counsel decided to elect the legal theory that no burglary or robbery occurred because the Defendants had standing permission to enter the victim's apartment, the witnesses were not credible, and there was a theft at most. In preparing this defense, trial counsel investigated the crime scene, reviewed discovery, and interviewed multiple witnesses and family members. During the trial, trial counsel cross-examined several witnesses about their alcohol use and inconsistencies in their statements and offered testimony from Mr. Emory, emphasizing that a gun would have been visible on the video footage if he had one.

Trial counsel filed multiple pretrial motions and orally joined Mr. Emory's motion for a bill of particulars. However, trial counsel believed that the motion became moot because the State said "on the record" that the gun was the deadly weapon used during the offenses. Because of the State's representation, trial counsel believed that the State's theory of the case was that Mr. Emory used the gun to accomplish the robbery. Trial counsel agreed that he did not request the State to place this representation in writing. However, the Petitioner did not ask trial counsel why he failed to do so.

4

Trial counsel confirmed receiving an email sent by the State to Mr. Emory's attorney after the bill of particulars hearing. This email said that after listening to the preliminary hearings, the State was taking the position that the Defendants used the gun and the hammer as deadly weapons to accomplish the robbery. In response to the email, trial counsel researched the issue with Mr. Emory's counsel and concluded that if the State wanted to withdraw the "stipulation," it was incumbent upon the State to clarify the withdrawal with the trial court. Further, trial counsel felt that he would not be zealously representing the Petitioner if he volunteered to the trial court that the State might want to withdraw a "stipulation" beneficial to his client. As such, trial counsel prepared for trial using his original theory that the gun was the only weapon until the State requested to withdraw the "stipulation."

At no point during the post-conviction hearing did the Petitioner ask trial counsel why he did not object to the State's opening statement alleging that the hammer was used. The Petitioner also did not ask trial counsel why he failed to object during Mr. Emory's cross-examination or the State's closing argument.

## 2.    Denial of Post-Conviction Relief

Following the hearing, the post-conviction court took the matter under advisement and issued a written order denying post-conviction relief on October 6, 2023. The post-conviction court found that trial counsel developed a trial strategy designed to impeach the State's witnesses and convince the jury that if a crime was committed, it was a theft and not a robbery. In reviewing the Petitioner's claim that trial counsel should have raised the "stipulation" issue, the court credited trial counsel's testimony that he made a strategic decision not to raise this issue before trial because it could have resulted in a detriment to his client. The court also found that the State never stipulated that the hammer could not be a deadly weapon and that a written document would have had no additional impact. The post-conviction court determined that the State's opening statement and closing argument regarding the hammer were not improper, given that the parties extensively discussed the hammer during the trial. Consequently, any objection raised by trial counsel would have been overruled.

The post-conviction court found that the Petitioner failed to establish that he was denied the effective assistance of counsel. The Petitioner filed a timely notice of appeal on November 6, 2023.[3]

---

[3]    Although an appealing party has thirty days to file a notice of appeal "after the date of entry of the judgment appealed from," Tenn. R. App. P. 4(a), the Petitioner filed his notice of appeal on November 6, 2023, or 31 days after the post-conviction order was entered. However, because the thirtieth day was a Sunday, the Petitioner's notice of appeal, which was filed the next day, was timely. *See* Tenn. R. App. P.

**STANDARD OF APPELLATE REVIEW**

Our supreme court has recognized that "the first question for a reviewing court on any issue is 'what is the appropriate standard of review?'" *State v. Enix*, 653 S.W.3d 692, 698 (Tenn. 2022). In this case, the principal issue is whether the post-conviction court properly denied relief because the Petitioner failed to show that he received the ineffective assistance of counsel. As our supreme court has made clear,

> [a]ppellate review of an ineffective assistance of counsel claim is a mixed question of law and fact that this [c]ourt reviews de novo. Witness credibility, the weight and value of witness testimony, and the resolution of other factual issues brought about by the evidence are entitled to a presumption of correctness, which is overcome only when the preponderance of the evidence is otherwise. On the other hand, we accord no presumption of correctness to the post-conviction court's conclusions of law, which are subject to purely de novo review.

*Phillips v. State*, 647 S.W.3d 389, 400 (Tenn. 2022) (citations omitted).

**ANALYSIS**

The Tennessee Post-Conviction Procedure Act provides an avenue for relief "when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103 (2018). A post-conviction petitioner has the burden of proving his or her allegations of fact with clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f) (2018). For evidence to be clear and convincing, "it must eliminate any 'serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" *Arroyo v. State*, 434 S.W.3d 555, 559 (Tenn. 2014) (quoting *State v. Sexton*, 368 S.W.3d 371, 404 (Tenn. 2012)).

Article I, section 9 of the Tennessee Constitution establishes that every criminal defendant has "the right to be heard by himself and his counsel." Similarly, the Sixth Amendment to the United States Constitution, made applicable to the states by the Fourteenth Amendment, guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." "These constitutional provisions guarantee not simply the assistance of counsel, but rather the reasonably

---

21(a); *State v. Bryant*, No. M2022-00260-CCA-R3-CD, 2023 WL 2783171, at *14 (Tenn. Crim. App. Apr. 5, 2023) ("[B]ecause the thirtieth day fell on a Sunday, Defendant had until Monday, February 28, 2022, to file a timely notice of appeal."), *no perm. app. filed*.

6

effective assistance of counsel." *Nesbit v. State*, 452 S.W.3d 779, 786 (Tenn. 2014). Accordingly, a petitioner's claim that he or she has been deprived "of effective assistance of counsel is a constitutional claim cognizable under the Post-Conviction Procedure Act." *Moore v. State*, 485 S.W.3d 411, 418 (Tenn. 2016); *see also Howard v. State*, 604 S.W.3d 53, 57 (Tenn. 2020).

"To prevail on a claim of ineffective assistance of counsel, a petitioner must establish both that counsel's performance was deficient and that counsel's deficiency prejudiced the defense." *Moore*, 485 S.W.3d at 418-19 (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996)). A petitioner may establish that counsel's performance was deficient by showing that "counsel's representation fell below an objective standard of reasonableness." *Garcia v. State*, 425 S.W.3d 248, 256 (Tenn. 2013) (quoting *Strickland*, 466 U.S. at 688). As our supreme court has also recognized, this court must look to "all the circumstances" to determine whether counsel's performance was reasonable and then objectively measure this performance "against the professional norms prevailing at the time of the representation." *Kendrick v. State*, 454 S.W.3d 450, 457 (Tenn. 2015) (quoting *Strickland*, 466 U.S. at 688).

"If the advice given or services rendered by counsel are 'within the range of competence demanded of attorneys in criminal cases,' counsel's performance is not deficient." *Phillips*, 647 S.W.3d at 407 (quoting *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)). Notably, because this inquiry is highly dependent on the facts of the individual case, "[c]onduct that is unreasonable under the facts of one case may be perfectly reasonable under the facts of another." *State v. Burns*, 6 S.W.3d 453, 462 (Tenn. 1999).

In addition, a petitioner must establish that he or she has been prejudiced by counsel's deficient performance such that the performance "render[ed] the result of the trial unreliable or the proceeding fundamentally unfair." *Kendrick*, 454 S.W.3d at 458 (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993)). In other words, a petitioner "must establish 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Davidson v. State*, 453 S.W.3d 386, 393-94 (Tenn. 2014) (quoting *Strickland*, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Howard*, 604 S.W.3d at 58 (quoting *Strickland*, 466 U.S. at 694).

In this case, the Petitioner argues that the post-conviction court erred in denying his petition for relief. More specifically, he asserts that trial counsel was constitutionally ineffective when he failed to prepare a defense to the State's theory that the hammer was a deadly weapon and when he failed to clarify a pretrial ruling related to the parties' permitted use of the hammer. Additionally, he asserts that trial counsel was ineffective when he failed to object: (1) to the discussion of the hammer in the State's opening statement; (2) to the questions seeking to clarify Mr. Emory's use of the hammer during

cross-examination; and (3) to the State's allegations that the hammer was used as a deadly weapon in their closing argument. He also argues that the cumulative effect of trial counsel's deficiencies was sufficient to establish that he was denied the effective assistance of counsel.

We address each of these issues in turn.

## A.    FAILURE TO PREPARE A DEFENSE

### 1.    Failure to Reduce Oral Order to Writing

The Petitioner first alleges that trial counsel was ineffective for failing to have the trial court issue a written order specifying that the hammer was not the deadly weapon. As background, Mr. Emory requested a bill of particulars before trial to clarify whether the "deadly weapon" alleged to be present in Counts 1 through 4 involved the handgun or hammer. During the hearing on the motion, the State's counsel confirmed its understanding of the preliminary hearing testimony that the deadly weapon was the handgun, not the hammer. The trial court then stated that there was no further need for a bill of particulars because the indictment did not refer to the hammer as a deadly weapon.

The Petitioner asserts that the State represented that it would not rely upon the hammer as a deadly weapon in its case in chief. From this premise, the Petitioner argues that trial counsel was deficient in failing to have the trial court memorialize this representation in a written order. The State responds that counsel was not ineffective because a written order would not have memorialized anything more than was already contained in the hearing transcripts. We agree with the State.

Importantly, a written transcript of the trial court's oral announcement documented both the State's representation and the court's ruling on the issue. The post-conviction court correctly recognized that a written order confirming the oral announcement would have had no "additional impact" on the case. In essence, the Petitioner would have us hold that trial counsel's failure to memorialize the order in a *second* written form fell below an objective standard of reasonableness. However, the Petitioner has not cited any authority that trial counsel was constitutionally required to seek a written order on a pretrial motion where a transcript already preserved the trial court's ruling. As such, the record does not support a finding that trial counsel was deficient in this regard. *Garcia*, 425 S.W.3d at 256.

In addition, the Petitioner has failed to show a reasonable probability that having a written order in addition to the transcript would have changed the outcome of the trial. *Davidson*, 453 S.W.3d at 393-94. The Petitioner has not shown that any written order

would, or even could, differ materially from the trial court's oral announcement denying the motion for a bill of particulars. After all, the transcript governs where a material conflict exists between a trial court's oral announcement preserved in a transcript and a later written order. *Cf. State v. Brown*, 479 S.W.3d 200, 213 (Tenn. 2015). The record does not support a finding that the presence of a written order in addition to the transcript would have changed the outcome of the trial in these circumstances.

At oral argument, the Petitioner argued that the prejudicial effect was one of convenience. He asserted that, when confronted with the trial court's later ruling on Counts 3 and 4 allowing the hammer to be considered, trial counsel more easily could locate an order rather than sifting through transcripts. However, no proof in the post-conviction record supports that trial counsel was hampered in this way. And, more importantly, in discussing this issue at the charge conference, the trial court told the parties that it "went back and listened to that motion hearing" in preparation for its ruling. As such, there is *no* likelihood that trial counsel's having both a transcript and a written order would have affected the outcome of the trial. We respectfully affirm the finding of the post-conviction court that the Petitioner is not entitled to relief on this ground.

### 2. Failure to Raise the State's Changed Position with Trial Court

The Petitioner next asserts that trial counsel was ineffective because he did not seek clarification from the trial court after the State changed its position that the handgun was the only deadly weapon referenced in the indictment. Specifically, he argues that trial counsel "chose to ignore" this email and not conduct any case law research on whether the hammer was a deadly weapon. In response, the State contends that trial counsel developed a reasonable, if ultimately unsuccessful, strategy to address the issue. We agree with the State.

The United States Supreme Court has recognized that "[t]he object of an ineffectiveness claim is not to grade counsel's performance." *Strickland*, 466 U.S. at 697. As such, "the petitioner is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy, and cannot criticize a sound, but unsuccessful, tactical decision made during the course of the proceedings." *Dellinger v. State*, 279 S.W.3d 282, 295 (Tenn. 2009) (citation and internal quotation marks omitted). Indeed, the fact that a particular strategy or tactic "failed or hurt the defense, does not, standing alone, establish unreasonable representation." *House v. State*, 44 S.W.3d 508, 515 (Tenn. 2001). In this regard, the "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable[.]" *Strickland*, 466 U.S. at 690.

In its order, the post-conviction court determined that trial counsel made a strategic choice not to immediately address the State's change in position with the trial court.

9

Specifically, it found that trial counsel believed raising the issue affirmatively would be detrimental to his client and that the State should first raise the issue of its changed position. The post-conviction court also concluded that this strategy was reasonable.

The evidence supports these findings. Trial counsel testified at the post-conviction proceeding that he was forwarded an email from Mr. Emory's attorney informing the parties that the State no longer agreed to use only the gun as the referenced deadly weapon. In response to this email, trial counsel researched the issue and discussed it with Mr. Emory's counsel. He then determined that it was incumbent upon the State to notify the trial court if it wanted to change its position as announced in open court. Trial counsel also believed he might harm the Petitioner's case by proactively raising the issue and allowing the State to retract its previous position. Instead, he decided to push for a clarifying jury instruction if the State's change in position became relevant during the trial.

The strategy was partially successful as the trial court prevented the State from contradicting its prior representation on Counts 1 and 2. "We will not deem counsel to have been ineffective merely because a different strategy or procedure might have produced a more favorable result." *Olive v. State*, No. M2023-00719-CCA-R3-PC, 2024 WL 2797015, at *11 (Tenn. Crim. App. May 31, 2024) (citation and internal quotation marks omitted), *perm. app. denied* (Tenn. Oct. 24, 2024). As another panel of this court noted in Mr. Emory's similar appeal, the trial court's changing its ruling on the hammer being a deadly weapon did not render counsel's performance deficient. *See Emory v. State*, No. E2023-01167-CCA-R3-PC, 2024 WL 2786804, at *4 (Tenn. Crim. App. May 30, 2024), *no perm. app. filed*. We affirm the post-conviction court's finding that trial counsel did not render deficient performance.

Because a post-conviction petitioner bears the burden of establishing *both* deficient performance and resulting prejudice, "a court need not address both concepts if the petitioner fails to demonstrate either one of them." *Garcia*, 425 S.W.3d at 257. As such, because the Petitioner has not shown that trial counsel rendered deficient performance, we pretermit any claim by the Petitioner that he suffered prejudice from trial counsel's actions. *Phillips*, 647 S.W.3d at 401 ("The petitioner must prove sufficient facts to support both the deficiency and prejudice prongs of the *Strickland* inquiry—or, stated another way, the post-conviction court need only determine the petitioner's proof is insufficient to support one of the two prongs to deny the claim."). We affirm the post-conviction court's judgment denying relief on this ground.

### 3. Failure to Object to Arguments and Testimony

The Petitioner also argues that trial counsel was deficient when he failed to object during the State's opening statement, closing argument, and cross-examination of Mr.

Emory. More specifically, the Petitioner asserts that trial counsel was ineffective when he failed to object to the characterization of the hammer as a deadly weapon in each of these circumstances.

The State responds that the Petitioner failed to prove that trial counsel was deficient when choosing not to object to the State's opening and closing statements. Further, the State argues that the Petitioner waived his claim regarding the cross-examination of Mr. Emory because he failed to raise it in his post-conviction petition. We agree with the State.

### a. Failure to Object in Opening Statements and Closing Arguments

Parties are entitled to make opening statements "setting forth their respective contentions[ and their] views of the facts and theories of the lawsuit." Tenn. Code Ann. § 20-9-301. Opening statements "are intended merely to inform the trial judge and jury, in a general way, of the nature of the case and to outline, generally, the facts each party intends to prove." *State v. Sexton*, 368 S.W.3d 371, 415 (Tenn. 2012) (citation and internal quotation marks omitted). "Decisions to object to opposing counsel's opening statement are often primarily tactical decisions." *Hall v. State*, No. M2021-01555-CCA-R3-PC, 2023 WL 2726780, at *8 (Tenn. Crim. App. Mar. 31, 2023) (citation and internal quotation marks omitted), *no perm. app. filed*.

The same is true with respect to closing arguments. Indeed, "[t]he decisions of a trial attorney as to whether to object to opposing counsel's arguments are often primarily tactical decisions," and "[t]rial counsel could decide not to object for several valid tactical reasons, including not wanting to emphasize unfavorable evidence." *State v. Lampley*, No. M2021-00636-CCA-R3-CD, 2023 WL 365190, at *23 (Tenn. Crim. App. Jan. 24, 2023) (citation and internal quotation marks omitted), *no perm. app. filed*. As such, even "without testimony from trial counsel as to 'why' he chose not to object to a statement, the court must assume it was a valid tactical decision." *See Hawkins v. State*, No. W2016-00723-CCA-R3-PC, 2017 WL 2829755, *7 (Tenn. Crim. App. June 30, 2017), *no perm. app. filed*.

Even apart from matters of strategy, however, a post-conviction petitioner must first identify the nature of the objection that should have been made and then show that the objection would have been sustained. The petitioner must further show a reasonable probability that with a properly made and sustained objection, the result of the trial would have been different. *See, e.g.*, *Edwards v. State*, No. W2023-00653-CCA-R3-PC, 2024 WL 321665, at *5 (Tenn. Crim. App. Jan. 29, 2024) (concluding that "trial counsel and co-counsel had not performed deficiently in declining to object to this argument because no basis existed for the court to sustain the objection in the absence of misconduct and that the Petitioner was not prejudiced by the lack of objection"), *no perm. app. filed*; *Crockett*

11

*v. State*, No. M2018-01416-CCA-R3-PC, 2020 WL 119698, at \*14 (Tenn. Crim. App. Jan. 10, 2020) ("[T]he Petitioner has not proven prejudice because he failed to offer evidence that such an objection would have succeeded, especially in light of his co-defendant's statements in closing."), *no perm. app. filed*.

In this case, the post-conviction court found that the trial court would have overruled an objection made by trial counsel during opening statements or closing arguments. It reasoned that the State "did not make any improper argument about the hammer." Importantly, the Petitioner points to nothing in the appellate record that contradicts these findings. On the contrary, the proof at trial showed "that the hammer was 'used or fashioned' to lead Mr. Beasley to reasonably believe it to be a deadly weapon," as we recognized in our opinion on direct appeal. *See Hartshaw*, 2021 WL 5861278, at \*13.

Because the Petitioner has not shown that any objection would have been sustained, he cannot show a reasonable probability that the trial result would have been different had an objection been made. As such, we respectfully affirm the finding of the post-conviction court that the Petitioner is not entitled to relief on this ground.

### b. Failure to Object During Cross-Examination

The Petitioner also argues that trial counsel was deficient when he failed to object to the State's asking questions about Mr. Emory's use of the hammer during cross-examination. In response, the State argues that the Petitioner waived this issue by failing to raise it in his petition for post-conviction relief or at the hearing. We agree with the State.

A post-conviction petitioner generally waives a ground for relief where he or she does not include the ground in the petition. *See* Tenn. Code Ann. § 40-30-110(c) ("Proof upon the petitioner's claim or claims for relief shall be limited to evidence of the allegations of fact in the petition."); Tenn. Sup. Ct. R. 28, § 8(D)(4) ("The hearing shall be limited to issues raised in the petition."). However, the petitioner may amend the petition within thirty days or at any other time upon a showing of good cause. *See* Tenn. Code Ann. § 40-30-107(b)(2). Also, the post-conviction court may permit an amendment to the petition, even during the evidentiary hearing, "when the presentation of the merits of the cause will otherwise be subserved." Tenn. Sup. Ct. R. 28, § 8(D)(5).

Importantly, though, this court does not have the authority to consider a post-conviction issue that was not raised in the original petition or a recognized amendment. *See State v. Bristol*, 654 S.W.3d 917, 927 n.4 (Tenn. 2022) ("The legislature has eliminated this discretion [to consider unpresented or unpreserved issues] in post-conviction proceedings."). Indeed, our supreme court has made clear that we may consider a post-

conviction issue on appeal *only* when that issue (1) was formally raised in the post-conviction petition or an amendment; or (2) was argued at the evidentiary hearing *and* was decided by the post-conviction court without objection by the State. *See Holland v. State*, 610 S.W.3d 450, 458 (Tenn. 2020) ("Tennessee appellate courts may only consider issues that were not formally raised in the post-conviction petition if the issue was argued at the post-conviction hearing and decided by the post-conviction court without objection.").

In this case, the post-conviction petition did not assert as a ground for relief that trial counsel failed to object during Mr. Emory's cross-examination by the State. This issue was not addressed or argued during the post-conviction hearing, nor was it decided by the post-conviction court. Therefore, we conclude that the Petitioner has waived this claim for post-conviction relief. *See Holland*, 610 S.W.3d at 458.

### 4. Failure to Prepare a Defense Generally

The Petitioner also appears to argue that trial counsel was deficient because he failed to prepare a general defense to the State's theory that the hammer was an article fashioned to lead the victim to believe it to be a deadly weapon. He seems to assert that if trial counsel had researched case law and raised the issue with the court before the trial, he would not have suffered additional prejudice.

The Petitioner did not raise this generalized issue in his post-conviction petition. Although he asked trial counsel several questions concerning the hammer theory, the Petitioner did not argue to the post-conviction court that trial counsel was deficient because he failed to prepare a general defense to this theory. And the post-conviction court did not rule on an issue regarding trial counsel's ineffectiveness concerning his failure to prepare an entirely different defense than the one he had already prepared. Accordingly, we conclude that the Petitioner has waived this claim for post-conviction relief. *See Holland*, 610 S.W.3d at 458.

### B. CUMULATIVE ERROR

Finally, the Petitioner argues that trial counsel's multiple failures to object to evidence, failure to prepare a defense, and failure to clarify several pretrial matters constituted cumulative error. This court has recognized that, "in the context of an ineffective assistance of counsel claim, cumulative error examines the prejudicial effect of multiple instances of deficient performance." *Harris v. State*, No. E2022-00446-CCA-R3-PC, 2022 WL 17729352, at *9 (Tenn. Crim. App. Dec. 16, 2022) (citation and internal quotation marks omitted), *perm. app. denied* (Tenn. Apr. 18, 2023). To that end, and perhaps obviously, a petitioner "who has failed to show that he received constitutionally deficient representation on any single issue may not successfully claim that his

constitutional right to counsel was violated by the cumulative effect of counsel's errors." *Conaser v. State*, No. M2023-00271-CCA-R3-PC, 2024 WL 244964, at *7 (Tenn. Crim. App. Jan. 23, 2024) (citation and internal quotation marks omitted), *no perm. app. filed*.

In this case, the record does not reflect any deficient performance by trial counsel. As such, no cumulative error claim is possible. *See Martin v. State*, No. E2022-00688-CCA-R3-PC, 2023 WL 3361543, at *5 (Tenn. Crim. App. May 11, 2023) ("[C]umulative error does not apply in post-conviction cases where the petitioner has failed to show any instance of deficient performance by counsel."), *perm. app. denied* (Tenn. Sept. 11, 2023). We conclude that the Petitioner is not entitled to relief on the basis of cumulative error.

## CONCLUSION

In summary, we hold that the Petitioner was not denied the effective assistance of counsel during his trial. Accordingly, because the Petitioner's conviction is not void or voidable because of the violation of a constitutional right, we respectfully affirm the denial of post-conviction relief in all respects.

_____
TOM GREENHOLTZ, JUDGE